Barbara J. TREGONING, Joe W. Hutchins, Joann Hartlerode, and Ripley Lance Petersen, Individually and on Behalf of all others similarly situated, Plaintiffs,

v.

AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY, a Michigan Corporation, Intracorp, Inc., a Delaware Corporation and Industrial Insurance Services, Inc., a Michigan Corporation, Defendants.

No. 1:91–CV–605.

United States District Court,
W.D. Michigan, S.D.

July 15, 1992.

Opinion Denying Reconsideration
Aug. 27, 1992.

Bruce C. Conybeare, John C. Johnson, Conybeare Law Office, PC, St. Joseph, MI, for plaintiffs.

Thomas J. Mulder, N. Stevenson Jennette, III, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, Ronald E. McNulty, American Community Mut. Ins. Co., Law

Dept., Livonia, MI; for defendant American Community Mut. Ins. Co.

Charles S. Mishkind, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for Intracorp, Inc.

Earl R. Jacobs, Amy E. Anderson, Jacobs & Miller, Southfield, MI, Andrew C. Pringle, Jr., Pringle & Simonsen, P.C., Farmington Hills, MI, for Industrial Ins. Services, Inc.

## OPINION

ROBERT HOLMES BELL, District Judge.

In this ERISA case, the remaining parties cross-move for summary judgment under Fed.R.Civ.P. 56. For the reasons set forth below, the plaintiffs' motion is DENIED and defendant American Community Mutual Insurance Company's motion is GRANTED.

## I. BACKGROUND

### A.

Defendant American Community Mutual Insurance Company ("American") provides group health insurance policies and self-insured arrangements to various companies. Watervliet Paper Company, Inc. ("Watervliet"), a non-party to this action, is currently in Chapter 11 bankruptcy. Plaintiffs are former employees of Watervliet.

In early 1989, American and Watervliet entered into a contract, called the Minimum Premium Agreement ("Agreement"). The Agreement provided that American would issue a group health policy, which, together with the Agreement, constituted a self-funded employee benefit plan ("Plan") under ERISA, see 29 U.S.C. § 1002, to Watervliet. The policy, effective March 6, 1989, provided coverage of various health care claims to the Plan beneficiaries. Watervliet's employees, including the plaintiffs, were the beneficiaries; they contributed, through a payroll deduction, a portion of Watervliet's premium paid to American.

Under the Agreement, Watervliet was first required to make a deposit of $98,753.16 into a cash reserve, called "Claims Fund." From this reserve, American paid the employees' health care claims on behalf of Watervliet.

To replenish the cash reserve, Watervliet was then billed for reimbursements each month. Watervliet had to remit its monthly reimbursements within 20 days of billing. In the event that Watervliet did not comply with the billing schedule, American had the right to stop its payment of the employees' health care claims, as well as to terminate the Agreement and the policy.

There was, however, no provision in the Agreement—or elsewhere in the policy—that mandated American to provide notice to Watervliet's employees, including the plaintiffs, of Watervliet's failure to remit its premium or reimbursement payments.

### B.

Almost from the beginning, Watervliet, a financially-strapped company, had trouble paying its full monthly reimbursements in a timely fashion. American sent a number of overdue notices, including notices threatening termination of the policy. Nevertheless, Watervliet continued to fall behind on its payments. Indeed, by December 1989, Watervliet had initially stopped making its payments altogether.

On January 10, 1990, American preliminarily suspended any further payment of the employees' claims. Still, as Watervliet made additional — subsequent — reimbursement payments, American, combining those partial payments with the funds in the cash reserve, began to resume its payments of the employees' claims. For the next few months, American continued to pay the employees' pre-December 31, 1989 claims.

During those months, however, it became clear to American that Watervliet would never pay all the reimbursements necessary to completely replenish the cash reserve. In fact, because of Watervliet's recurring failure to pay the full reimbursements, the funds in the reserve were close to being depleted. American therefore decided to terminate the Watervliet's policy pursuant to the Agreement.

By letter of April 12, 1990, American informed Watervliet that it was terminating

the policy, effective February 28, 1990, on the grounds of Watervliet's non-payment. That letter also informed Watervliet to notify all employees covered under the policy that the coverage had ended, and that American was not liable for any claims or losses after the termination date, unless otherwise provided in the policy. By another letter, dated May 17, 1990, American clarified to Watervliet that the effective termination date of the policy was December 31, 1989.

Meanwhile, neither American nor Watervliet notified the plaintiffs that Watervliet was failing to make its required monthly reimbursements. Nor did they give any prior notice about the termination of the coverage to the plaintiffs and other employees. Moreover, American's authorized agent, Intracorp, Inc. ("Intracorp") continued to provide pre-certification and other ancillary coverage services to the plaintiffs.

In early June 1990, Watervliet's business soured further. Watervliet was compelled to lay off its employees, including the plaintiffs. Concurrently, the plaintiffs learned, for the first time, that their health care insurance coverage had lapsed on December 31, 1989 for Watervliet's failure to make its premium and reimbursement payments. American therefore refused to pay or reimburse the employees' health care claims incurred after that date. Subsequently, Watervliet filed for bankruptcy.

This action ensued.

### C.

Initially, the plaintiffs, suing for themselves and on behalf of all of the 200–plus employees of Watervliet who were affected by the lapse of the policy, filed a state court complaint in the Berrien County Circuit Court on May 22, 1991. The state court complaint alleged a host of state law claims related to the cancellation of the group health insurance policy against American Community and other former defendants, Intracorp, and Industrial Insurance Services, Inc. ("Industrial").[1]

On July 17, 1991, American removed the case to this Court on the basis of federal question jurisdiction. On August 15, 1991, the plaintiffs amended their complaint to add an ERISA claim.

On October 10, 1991, the Court dismissed, by a bench ruling, all the state law claims in the First Amended Complaint on the grounds of ERISA preemption. *See* Hearing Transcript of October 10, 1991.

### D.

The only remaining claim is the ERISA claim. *See* First Amended Complaint, Count XVIII. Under the claim, the plaintiffs allege two theories: (1) that American, as a fiduciary of the ERISA Plan, breached its fiduciary duty to the plaintiffs, the Plan beneficiaries (pursuant to 29 U.S.C. § 1109(a)); and (2) that American, even if it were not a fiduciary, must comply with the terms of the Plan by paying all the employees' health care claims that were otherwise payable but for American's termination of the policy (pursuant to 29 U.S.C. § 1132). *See* First Amended Complaint ¶¶ 165–173.

## II. DISCUSSION

At this time, the parties cross-move for summary judgment on the remaining ERISA claim. In their cross-motions, both parties, without expressly stating so, agree that there is no triable issue of fact. The parties then advance their own legal arguments.

In support of its motion, American makes two contentions. First, the actual language of the ERISA Plan—comprising of the Agreement and the policy—shows that American had no duty to continue paying the plaintiffs' health care claims after Watervliet failed to make full reimbursement payments; in other words, American's denial of the plaintiffs' health care claims was not contrary to the terms of the Plan. Second, American breached no ERISA fiduciary duty by not notifying the plaintiffs of Watervliet's failure to meet its payment obligations to American.

On the other hand, the plaintiffs return with one argument. They assert that, inde-

---

1. Subsequently, both Intracorp and Industrial have been dismissed from this action. *See* Stipulation and Order of Dismissal Without Prejudice, filed November 22, 1991.

pendent of the terms of the Plan, American breached its ERISA fiduciary duty by not notifying the plaintiffs of Watervliet's failure to meet its obligations to American and by allowing its authorized agent, Intracorp, to continue to provide pre-certification and other services to the plaintiffs.

### A.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To be genuine, the dispute must concern evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To meet this standard, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It requires a determination of whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In other words, the movant could challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

In determining a summary judgment motion, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

In this case, there is no genuine issue of material fact, and summary judgment is therefore ripe.

### B.

In the First Amended Complaint, the plaintiffs allege a separate theory under 29 U.S.C. § 1132. *See* First Amended Complaint ¶¶ 169–172. Under that theory, the plaintiffs assert that American, in contravention to the ERISA Plan at issue, denied the plaintiffs' health care claims.

In these motions, however, the plaintiffs focus only on the breach of fiduciary duty theory under 29 U.S.C. § 1109(a). More precisely, the plaintiffs contend that:

> [their] position is that American owed a duty to plaintiffs as a fiduciary pursuant to ERISA, and that American violated this duty by failing to notify plaintiffs that their employer, Watervliet Paper Company ("Watervliet"), had failed to pay the amounts due to American, specifically monthly reimbursement to American of amounts paid from the claims fund by American and monthly payment of a minimum premium.

Plaintiffs' Opening Brief at 1. In the same vein, the plaintiffs also argue that "American owed plaintiffs a duty to use reasonable care and diligence," and that American violated this duty by allowing Intracorp to "continue to provide pre-certification and other services to the plaintiffs." *Id.* at 1–2.

Moreover, in their reply brief in support of their motion, the plaintiffs exclusively address the central issue of the section 1109(a) theory: whether American breached its fiduciary duty under ERISA by failing to notify the plaintiffs of Watervliet's failure to fully remit the monthly reimbursements. *See generally* Plaintiffs' Reply Brief. And finally, at oral argument, the plaintiffs repeatedly characterized this action as a breach of fiduciary duty case. *See, e.g.*, Hearing Transcript for Cross-motions for Summary Judgment at 14, 26, 31.

In other words, despite their allegations in the First Amended Complaint, the plaintiffs in the summary judgment briefings and hearing have made no reference to the section 1132 theory; that American, in contravention to the ERISA Plan, denied the plain-

tiffs' health care claims. In so doing, the plaintiffs have more than failed to shoulder their burden of supporting this theory; they have outright abandoned it. The section 1132 theory therefore cannot stand. Summary judgment in favor of American must be GRANTED on this theory.[2]

## C.

Next, the more difficult question concerns the heart of the instant case—the section 1109(a) theory. The question is whether American breached its fiduciary duty under ERISA by not notifying the plaintiffs of Watervliet's failure to fulfill its premium and reimbursement obligations. Plaintiffs urge the Court to answer this question in the affirmative. The Court cannot.

### (1)

To prevail on a breach of fiduciary theory, based on 29 U.S.C. § 1109(a), the plaintiff must first establish that the defendant is an ERISA "fiduciary." Plaintiff need not, however, be expressly named as a "fiduciary" in the plan documents to be one. *See Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 568 (7th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992). Rather, the plaintiff qualifies as a "fiduciary," if he falls under the ERISA definition of the term. *Id.*

The statute defines the term "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Consistent with the congressional intent to safeguard the interests of ERISA participants and their beneficiaries, courts—in this Circuit and elsewhere—have generally construed the term "fiduciary" broadly. *See, e.g., Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988); *Landry v. Air Line Pilots Ass'n International*, 901 F.2d 404, 417 (5th Cir.1990); *Mutual Life Ins. Co. v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988).

But there are certain limits to that broad construction. One of them is the "strict limiting effect on the definition of 'fiduciary' that is imposed by the qualifying phrase 'to the extent.'" *Licensed Div. Dist. No. 1 MEBA/ NMU v. Defries*, 943 F.2d 474, 477 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). That qualifying phrase "indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1459–60 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992) ("The statutory language plainly indicates that the fiduciary function is not an indivisible one."); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990) ("Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions."); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir.1984) ("ERISA recognizes that a person may be a fiduciary for some purposes and not others.").

■ To determine whether a person is a fiduciary with respect to a particular function at issue, the ERISA statute requires an examination of the discretionary authority or responsibility of the person with respect to that function. *See Coleman*, 969 F.2d 54, at 61; *Sommers Drug Stores*, 793 F.2d at 1460. In this examination, an initial review of the ERISA plan documents is required. *Cole-*

---

**2.** The Court recognizes that a breach of fiduciary duty claim may be brought pursuant to section 1132. *See Falcche v. Sun Life Assur. Co.*, 958 F.2d 730, 733 (6th Cir.1992). Accordingly, the

foregoing discussion applies to the extent that the section 1132 theory is separate from the section 1109(a) theory, as it appears to be the case here.

*man,* 969 F.2d at 61. However, should such a review fail to reveal any discretionary authority or responsibility as to the function at issue, a scrutiny beyond the formal allocation of responsibilities must be conducted; the actions of the person who is to be charged as a fiduciary for that function must be further considered. *Coleman* at 62; *see, e.g., Landry,* 901 F.2d at 418–19 (remanding the action to the district court for failing to consider the extent of the actual fiduciary authority possessed or exercised as to certain functions). If neither level of review discloses evidence demonstrating that a person possessed or exercised discretionary authority or responsibility with respect to the function at issue, he is not an ERISA fiduciary for that function. *Coleman,* 969 F.2d at 62.

■ Conducting that two-tier review in this case, the Court concludes that American was not an ERISA fiduciary with respect to the notification at issue. There was no formal authority or responsibility as to the notification function. Nor did American actually possess or exercise any fiduciary authority or responsibility on that function.

First, there was no formal allocation. The plan documents—the previously described Minimum Premium Agreement and the insurance policy—do not suggest that American had any authority or responsibility to provide notice to the employees of Watervliet regarding Watervliet's failure to meet its monthly premium or reimbursement obligations.[3] Rather, it appears from the letter of April 12, 1990, sent by American to Watervliet regarding the termination of the policy, that it was Watervliet's sole responsibility to notify its employees, including the plaintiffs, regarding its failure to fulfill its obligations. *See* Exhibit 7 to Plaintiffs' Opening Brief. Indeed, at oral argument, the plaintiffs' counsel repeatedly acknowledged as much; the counsel stated six times that the plan documents themselves imposed no such notification responsibility or authority to American. *See* Hearing Transcript for Cross-motions for Summary Judgment at 20, 21, 22, 23, 26, 29.

Second, American did not act as a fiduciary as to the notification function. There is

nothing on the record that shows that American acted in any way to voluntarily assume the notification responsibility or authority. And the plaintiffs have not claimed that American had done so. To be sure, had American acted otherwise, the plaintiffs could not have alleged this theory.

Taking an expanded view of the term "fiduciary" and the duties thereunder, the plaintiffs, however, contend that American, as a fiduciary, had an independent duty of notification. In support, the plaintiffs argue that American was a fiduciary because it possessed or exercised discretionary authority or responsibility as to a number of matters unrelated to the notification function at issue.

Plaintiffs' argument is unpersuasive. Their argument is based on a misunderstanding of the concept of fiduciary status. As suggested above, and as the Fourth Circuit—in reversing the district court in *Coleman,* which the plaintiffs principally rely on—aptly stated, fiduciary status is not an "all-or-nothing concept." *Coleman,* 969 F.2d 54, 61. A person who may be a fiduciary under an employee welfare benefit plan may not be a fiduciary with respect to a particular function under the plan. *Id.* at 61; *see cf. Musto v. American General Corp.,* 861 F.2d 897, 911 (6th Cir.1988) (a company may act as a fiduciary in performing one task, but not as to another), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). In this case, as explained above, American was not a fiduciary as to the particular function at issue—the notification function. Contrary to the plaintiffs' contention, whether American possessed or exercised a panoply of discretionary authority or responsibility as to matters unrelated to the notification function is of no concern here.

Of course, what the plaintiffs are really urging this Court to do are as follows: (1) to disregard Congress' mandate for adherence to the provisions of the written ERISA plan, *see* 29 U.S.C. § 1102(a)(1), and (2) to adopt, instead, an expanded view of the term "fiduciary," which has been discredited for "judicial inventiveness." *Coleman,* 969 F.2d 54,

---

**3.** In fact, nowhere in the plan documents is there any indication that American was named as a "fiduciary" or an "administrator" with respect to the Plan here.

62. Or to put it more concisely, the plaintiffs invite this Court to redefine the contours of fiduciary status beyond the terms and the congressional intent of the ERISA statute. For the reasons stated above, this Court cannot—and will not—do so. Summary judgment in favor of American is GRANTED on the section 1109(a) theory as well.[4]

### (2)

In light of the foregoing, the Court need not address other arguments raised by the plaintiffs.

### III. CONCLUSION

Defendant American Community Mutual Insurance Company's motion for summary judgment is hereby GRANTED and the plaintiffs' cross-motion for the same is hereby DENIED. The action is DISMISSED with prejudice.

The Clerk shall enter judgment in favor of defendant American Community Mutual Insurance Company.

IT IS SO ORDERED.

### OPINION ON MOTION FOR RECONSIDERATION

In this ERISA case, the plaintiffs move for reconsideration under Fed.R.Civ.P. 59(e).[1] Plaintiffs argue that the Court's July 15, 1992 Opinion and Order, granting summary judgment in favor of the sole remaining defendant, was erroneous. For reasons that follow, the motion is DENIED.[2]

### I.

On July 14, 1992, this Court issued its Opinion and Order, granting summary judgment in favor of defendant American Community Mutual Insurance Company ("American") and denying the same to the plaintiffs.

The Court concluded that the plaintiffs could not withstand summary judgment on the only remaining claim—the ERISA claim—in the plaintiffs' First Amended Complaint. The Court explained that the plaintiffs' two ERISA theories—one under 29 U.S.C. § 1109(a) and the other under 29 U.S.C. § 1132—had failed.

The Court had two separate reasons. First, the section 1132 theory failed because the plaintiffs had neglected to address that theory throughout the summary judgment proceeding. *See* Opinion and Order at 1057–58. And second, the section 1109(a) theory failed because American was not, as a matter of law, an ERISA fiduciary as to the notification function at issue. *See id.* at 1058–60. The Court also noted that because of the second reason, regarding the section 1109(a) theory, there was no need to reach any other arguments raised by the plaintiffs. *See id.* at 1060.

In response, the plaintiffs have timely moved for reconsideration under Fed. R.Civ.P. 59(e).

### II.

Plaintiffs principally contend that reconsideration and reversal are required because the Court did not consider and follow a recent Eleventh Circuit case. In addition, the plaintiffs argue that the Court did not address one of the plaintiffs' claims.

Upon careful review, the Court finds neither of the arguments persuasive. It therefore concludes that there is no valid basis to disturb the Court's conclusions set forth in the July 15, 1992 Opinion and Order. The reasons follow.

1. Plaintiffs' reliance on the recent Eleventh Circuit decision in *Willett v. Blue Cross*

---

4. Under the same reasoning, American was not a fiduciary as to its actions with respect to Intracorp.

1. Plaintiffs actually neglected to label their reconsideration motion. However, since the plaintiffs urge this Court to, in effect, "alter or amend" the Court's grant of summary judgment in favor of defendant American Community Mutual Insurance Company ("American") and since the plaintiffs have served the motion to American within ten days after entry of judgment, it ap-

pears that the motion can be considered as a motion based on Fed.R.Civ.P. 59(e). *See* Fed. R.Civ.P. 59(e); *Columbia Gas Transmission Corp. v. Limited Corp.,* 951 F.2d 110, 112 (6th Cir. 1991).

2. The background facts and procedural history of this case are adequately recited in the Court's Opinion and Order of July 14, 1992. There is no need to repeat them here.

& *Blue Shield,* 953 F.2d 1335 (11th Cir.1992), is misplaced. Contrary to the plaintiffs' contention, the *Willett* case is not applicable here.

In *Willett,* the Eleventh Circuit discussed the issue of whether a fiduciary of an ERISA plan had a duty to notify the beneficiaries that their medical coverage had been suspended for non-payment of premium by a co-fiduciary of the plan, in light of the co-fiduciary's failure to directly notify the beneficiaries on the suspension. *See* 953 F.2d at 1340–42. The *Willett* court, however, did not address the predicate issue of whether the party charged with liability under 29 U.S.C. § 1105(a) was an ERISA fiduciary under 29 U.S.C. § 1002(21)(A). Apparently, the fiduciary status of that defendant was not disputed in *Willett.*

By contrast, the parties in this case vigorously contested the foundation issue of whether American was an ERISA fiduciary under 29 U.S.C. § 1002(21)(A). In fact, this Court granted summary judgment in favor of American under the section 1109(a) theory on the grounds that American was not an ERISA fiduciary as to the notification issue at hand. *See* Opinion and Order at 1058–60. Further, the Court noted that since American had not qualified as an ERISA fiduciary under section 1002(21)(A), there was no need to reach any other questions, such as whether American had a fiduciary duty to notify, as the *Willett* court did. *See* Opinion and Order of July 15, 1992 at 1060. In short, since this case involved a different issue, there was no need to consider *Willett.*

2. Equally unavailing is the plaintiffs' other contention that the Court did not address one of the plaintiffs' claims—the "equitable estoppel claim." The Court believes, after reviewing the record, that it has adequately disposed of the claim.

Plaintiffs' *state* law equitable estoppel claim—which appears to be part of Count IX of the First Amended Complaint ("Estoppel and Detrimental Reliance" claim)—was dismissed on the grounds of ERISA federal preemption on October 10, 1991, long before the summary judgment proceeding. *See* Hearing Transcript of October 10, 1991; *see also* Opinion and Order at 5.

And as to the *federal* equitable estoppel claim, the plaintiffs' written summary judgment submissions did not clearly identify such a claim. Plaintiffs, while submitting certain affidavits, did not specifically mention an estoppel claim during the oral argument, *see* Hearing Transcript of February 7, 1992 at 24–26; indeed, the plaintiffs' singular focus was on the breach of fiduciary claim under 29 U.S.C. § 1109(a). *See* Opinion and Order at 8. But even if the plaintiffs had properly identified and advanced the estoppel claim at the summary judgment proceeding, it appears that the claim was nothing more than a part of the 29 U.S.C. § 1132 theory, *see* First Amended Complaint, Count XVIII, ¶ 172B, which this Court addressed and rejected. *See* Opinion and Order of July 15, 1992 at 1057–58. Thus, it cannot be said that the Court overlooked the "equitable estoppel claim."

### III.

For the reasons given above, the plaintiffs' motion for reconsideration under Fed. R.Civ.P. 59(e) is hereby DENIED.