**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CASSANDRA LYNN SHADE, Executrix
and personal representative of
Marvin E. Stephens, deceased,
<u>Plaintiffs-Appellees,</u>

v.

PANHANDLE MOTOR SERVICE
CORPORATION,
<u>Defendant-Appellant,</u>

and

RALPH ALBERTAZZIE; MOUNTAIN
STATE BLUE CROSS & BLUE SHIELD,
INCORPORATED, Trustees/Successors

in interest of Blue Cross/Blue
Shield of West Virginia; PHOENIX
MUTUAL LIFE INSURANCE COMPANY;
WEST VIRGINIA PUBLIC EMPLOYEES
INSURANCE AGENCY,
<u>Defendants,</u>

BERKELEY COUNTY WEST VIRGINIA
SCHOOL BOARD,
<u>Defendant & Third Party Plaintiff,</u>

v.

CAROLA STEPHENS,
<u>Third Party Defendant.</u>

No. 95-1129

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Richard L. Williams, Senior District Judge, sitting by designation.
(CA-93-5-M)

Submitted: June 18, 1996

Decided: July 11, 1996

Before MURNAGHAN, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Barry P. Beck, MARTIN & SEIBERT, L.C., Martinsburg, West Virginia, for Appellant. Joseph E. Caudle, Tampa, Florida, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Panhandle Motor Service Corporation ("Panhandle") appeals from the district court's order entering judgment in favor of Appellee Marvin E. Stephens on his claim for medical expenses and attorneys' fees in this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1132(e) (West Supp. 1996). Finding no reversible error, we affirm.

Stephens initiated this action against Panhandle and various other defendants pursuant to the civil enforcement provisions of ERISA. 29 U.S.C.A. § 1132(e) (West Supp. 1996). Following a one-day bench trial, the district court found that Panhandle breached its fiduciary duty to Stephens by failing to notify him of a change in his insurance coverage status and in failing to correct its mistake once it learned

that Stephens had been inadvertently omitted from insurance coverage.**1** Panhandle timely appealed.**2**

The facts of the case are ably recounted in the district court's findings of fact and conclusions of law. Panhandle operates the Panhandle 76 Truck Stop on Interstate 81 in Berkeley County, West Virginia. The company is owned by Ralph Albertazzie and Edward Stout. Panhandle currently employees about 70 employees. Between 1978 and 1994, Panhandle employed more than 1600 employees at different times. Panhandle first employed Stephens on October 19, 1978. Stephens worked for Panhandle intermittently between 1978 and January 11, 1992.

On May 1, 1980, Stephens was enrolled in his wife Carola Stephens' employee group health plan with the Berkeley County Board of Education ("BCBE"). BCBE's group health plan was provided by the West Virginia Public Employees Insurance Agency. In December 1989, Stephens enrolled in Panhandle's employee group health plan through Mountain State Blue Cross & Blue Shield ("Blue Cross"). In March 1990, Stephens and Carola Stephens separated.

In the fall of 1990, Stephens was diagnosed with a seriously malfunctioning liver and was certified as a candidate for a liver transplant at the University of Virginia Medical Center. Stephens was notified on December 24, 1990, that a liver was available for transplant. Later that day, Stephens went to the University of Virginia Medical Center, received the liver transplant, and began an extended period of recovery.

Panhandle's employment file for Stephens bears a December 24, 1990, entry stating "quit-disability," suggesting that Stephens quit his job on that date. Trial testimony revealed that when Stephens left for

_____

**1** On November 29, 1994, the district court granted Phoenix Mutual Insurance Company's ("Phoenix") motion for summary judgment on its cross-claim against Panhandle for attorneys' fees.
**2** Stephens died unexpectedly of congestive heart failure on June 24, 1995. Cassandra Lynn Shade, Stephens' daughter, qualified as Stephens' executrix and personal representative, and has replaced Stephens in this action.

3

his liver transplant, employees at Panhandle did not believe that he would return to work. However, Stephens filed a written request for a medical leave of absence with Panhandle. Stephens was neither notified that he had been terminated nor given termination pay as required by W. Va. Code § 21-5-4 (1996). In fact, both Stephens and Panhandle represented to the district court that Stephens was on a medical leave of absence when he left work to have the liver transplant.

On March 1, 1991, Panhandle terminated its employee group health plan with Blue Cross and implemented a self-insurance plan. Panhandle entered into an arrangement with Phoenix Mutual Insurance Company ("Phoenix"), whereby Phoenix would provide "stop-loss" insurance coverage for Panhandle. Phoenix agreed to cover any medical bills of covered Panhandle employees that exceeded $5000. Stephens' coverage under Blue Cross thus terminated in March 1991.

However, due to an administrative error, Panhandle did not transfer Stephens to its new group health plan. Panhandle omitted Stephens' name from the list of Panhandle employees that it sent to Phoenix. Panhandle also excluded the name of a Mr. McIntyre, an employee suffering from cancer, from the employee census. The district court concluded that the record failed to establish that Panhandle intentionally omitted the names of Stephens and McIntyre from the list sent to Phoenix. The evidence at trial established that under Panhandle's plan with Phoenix, Stephens would have been required to pay $72.28 per month for individual health insurance coverage.

Stephens and Carola Stephens were divorced on March 14, 1991. On that date, Carola Stephens notified her BCBE group health plan that Stephens and their daughter were no longer covered dependents. Carola Stephens had previously informed Stephens that she would terminate his BCBE coverage unless he agreed to pay the insurance premiums. On March 31, 1991, BCBE sent a letter to Stephens notifying him that his coverage under its group health plan was terminated because of his divorce and that he had sixty days to elect continuation coverage. Stephens did not elect to continue his coverage under the BCBE plan because he believed that he was covered under the Blue Cross plan through Panhandle.

4

On April 11, 1991, Stephens returned to work at Panhandle on a part-time basis. On June 17, 1991, however, Stephens terminated his employment with Panhandle because of illness. Pursuant to the requirements of the Comprehensive Omnibus Budget and Reconciliation Act ("COBRA"), Panhandle notified Stephens that he could elect continuation coverage under Panhandle's group health plan with Phoenix. Because Panhandle had never submitted Stephens' name to Phoenix, however, Stephens' request to elect continuation coverage was denied.

Stephens again returned to work at Panhandle in August 1991. Stephens was not listed as a beneficiary under Panhandle's group health plan with Phoenix. Stephens ultimately terminated his employment with Panhandle because of illness in January 1992. Stephens became eligible for Medicare in April 1993.

The evidence at trial established that Panhandle made a profit of approximately $25,000 for tax year 1993. A statement of financial condition submitted with the tax return revealed that Panhandle's owners, Albertazzie and Stout, each earned about $80,000 in 1993. The evidence adduced at trial further revealed that Stephens' medical treatments have cost him $160.908.30. Stephens submitted documentation indicating that he incurred $31,777 in attorneys' fees in prosecuting this action.

We review findings of fact by the district court for clear error. Fed. R. Civ. P. 52(a); Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512-13 (4th Cir. 1994). The findings of fact will not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. We find that the district court did not clearly err in this case.

A. Stephens' Claim for Medical Expenses

Under the COBRA amendments to ERISA, the plan sponsor of an employee group health plan over a certain size must provide continuing coverage for qualified beneficiaries who would lose coverage under the plan because of a "qualifying event." 29 U.S.C.A. § 1161(a) (West Supp. 1996). A qualifying event is defined as any of the following: (1) the death of the covered employee; (2) the termination of

5

the covered employee's employment; (3) the divorce or legal separation of the covered employee from the employee's spouse; (4) the covered employee becoming entitled to benefits under Title XVIII of the Social Security Act; (5) a dependent child ceasing to be a dependent child; or (6) a proceeding in a case involving an employer from whose employment the covered employee retired at any time. 29 U.S.C.A. § 1163 (West Supp. 1996).

Both parties represented that Stephens was on medical leave of absence from Panhandle when he left work on December 24, 1990, to have a liver transplant. A medical leave of absence does not constitute a "qualifying event" under 29 U.S.C.A.§ 1163. See generally Truesdale v. Pacific Holding Co., 778 F. Supp. 77, 82-83 (D.D.C. 1991) (employer's switch to new group health plan did not trigger COBRA notice requirement). Thus, Panhandle was not obligated to send Stephens a COBRA continuation coverage notice at the beginning of his medical leave of absence, and the district court correctly so held.

The district court also found, however, that by failing to inform Phoenix that Stephens was a covered employee under Panhandle's group health plan, Panhandle breached its fiduciary duty to Stephens. ERISA defines "fiduciary" as including any person or entity that "has any discretionary authority or discretionary responsibility in the administration of [an ERISA] plan." 29 U.S.C.A. § 1002(21)(A)(iii) (West Supp. 1996). Congress intended that the term"fiduciary" be construed broadly. See Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987); Connors v. Paybra Mining Co. , 807 F. Supp. 1242, 1245 (S.D.W. Va. 1992). Panhandle was the administrator of its group health plan; consequently, the district court properly found that Panhandle acted as a "fiduciary" within the meaning of the statute, and accordingly, owed a fiduciary duty to Stephens. See Barnes v. Lacy, 927 F.2d 539, 544 (11th Cir.) (fiduciary duty attaches where employer "wears two hats" by acting as both employer and plan administrator), cert. denied, 502 U.S. 938 (1991).

ERISA provides that a fiduciary breaches its duty to a plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled. 29 U.S.C.A. § 1104(a)(1)(B) (West 1985 & Supp. 1996); Blatt, 812 F.2d at 813. Moreover, an ERISA fiduciary

6

has a duty to inform a beneficiary of any change in his coverage status. Willett v. Blue Cross & Blue Shield, 953 F.2d 1335, 1340 (11th Cir. 1992). Thus, the district court properly found that when Panhandle terminated its group health plan with Blue Cross and implemented a self-insured plan with Phoenix providing stop-loss coverage, it had a fiduciary duty to enroll all of its employees in the new plan so that they enjoyed continued medical coverage. Panhandle's failure to inform Phoenix that Stephens was a covered employee denied Stephens coverage under the plan, and thus constituted a breach of Panhandle's fiduciary duty to Stephens.

The district court also found that Panhandle further breached its fiduciary duty in neglecting to inform Stephens of the change in his insurance coverage status, and in failing to correct its mistake once it learned that Stephens had been omitted from the employee census provided to Phoenix.

A fiduciary that breaches the fiduciary duties owed a plan participant is personally liable "to make good to such plan any losses to the plan resulting from each such breach, . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a) (1988). The district court found that, in this case, the appropriate remedy was to restore Stephens to the position he would have occupied but for Panhandle's breach of its fiduciary duty. See Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985). Accordingly, the court ordered Panhandle to reimburse Stephens for all medical expenses incurred between March 1991 (the date on which his Blue Cross coverage terminated) and April 1993 (the date Stephens became eligible for Medicare benefits). Stephens' documentation revealed that he incurred $124,542.89 in medical expenses between March 1991 and April 1993. The district court subtracted from that total $1,734.72 in insurance premiums that Stephens would have had to pay Panhandle's group health plan during that time. Accordingly, the district court properly ordered Panhandle to reimburse Stephens for medical expenses in the amount of $122,808.17.

B. Stephens' Claim for Punitive Damages

The district court next considered Stephens' claim for punitive damages. COBRA provides that a court may assess a penalty of up

to $100 per day from the date the employer failed to provide the required COBRA notice. 29 U.S.C.A. § 1132(c)(1) (West Supp. 1996). The penalty provisions of the statute are intended to induce compliance by plan administrators. Paris v. F. Korbel & Bros., Inc., 751 F. Supp. 834, 839-40 (N.D. Cal. 1990). In this case, Panhandle employees stated that they subjectively believed that Stephens terminated his employment on December 24, 1990, when he left to receive a liver transplant. Although such termination would have constituted a "qualifying event" requiring Panhandle to provide continuation coverage notice, Panhandle failed to provide such notice. Thus, the district court found it appropriate to impose a penalty to impress upon Panhandle the importance of compliance with COBRA notice requirements. Because the record did not establish that Panhandle acted in bad faith, and because Panhandle had already amended its COBRA notification procedure, the court declined to assess the maximum penalty of $100 per day. Rather, the court found that Panhandle should pay Stephens a penalty of $5 per day from December 24, 1990, to March 11, 1993 (the date Stephens filed the instant suit). See Phillips v. Riverside, Inc., 796 F. Supp. 403, 411 (E.D. Ark. 1992). Thus, the total penalty assessed was $4,035. We find that amount to be reasonable.

C. Stephens' Claim for Attorneys' Fees

In an ERISA enforcement action, a court may award reasonable attorneys' fees and the costs of action to either party. 29 U.S.C. § 1132(g)(1) (1988). In determining whether such an award is appropriate, courts generally consider: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons from similar conduct; (4) whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of the ERISA plan; and (5) the relative merits of the parties' positions. Knepper v. Automotion, Inc., 788 F. Supp. 999 (N.D. Ill. 1992).

Analyzing those factors, the district court properly assessed attorneys' fees. First, the court found that Panhandle has sufficient resources to satisfy an attorneys' fees award. Next, the court reasoned that Panhandle must be held accountable for its negligent administra-

8

tion of its group health plan, which rendered Stephens uninsured in the face of substantial medical expenses. Third, the court found that penalizing Panhandle would deter other ERISA plan administrators from similar activities. Thus, upon reviewing Stephens' quantified fee demand, the court ordered Panhandle to reimburse Stephens for attorneys' fees in the amount of $27,712.[3]

Based upon the foregoing, we find that the district court did not clearly err in awarding judgment for Stephens in this action. The record supports the district court's findings of fact and conclusions of law. Accordingly, we grant Appellees' motion for submission on the briefs and we affirm the district court's order.

<u>AFFIRMED</u>

_____

[3] The court also directed Panhandle to reimburse Phoenix for attorneys' fees in the amount of $18,151.12. That portion of the district court's order is not being challenged on appeal here.

9