This is an appeal of a judgment based on a jury verdict finding breach of an insurance contract and bad faith failure to pay a claim. We affirm in part, reverse in part, and remand with directions.
Charlie A. Blackmon was employed as a debit agent with Peninsular Life Insurance Company (Peninsular). His job consisted of selling insurance policies and collecting premiums, primarily door to door. As a fringe benefit of his employment, Blackmon had disability coverage supplied by Connecticut General Life Insurance Company (Connecticut General). Because this policy did not pay benefits until an employee was totally disabled for six months, Peninsular maintained a supplemental disability plan whereby an employee could receive temporary disability coverage during the six-month waiting period. Peninsular paid the amount of this temporary disability out of its general operating revenues, without withholding any premiums from its employees. The supplemental plan was an oral agreement; there was no written policy, no formal mechanism for evaluating claims, and no definitions for determining if an employee was totallydisabled, and the plan was not regulated by the state insurance department. The amount and duration of the coverage that an employee could receive depended on his length of service with Peninsular. In Blackmon's case, he was entitled to $2,086.19 during a maximum of 13 weeks' disability.
Blackmon suffered from several health problems, including diabetes mellitus, glaucoma, hypertension, chronic obstructive lung disease, bilateral clubbed feet, degenerative arthritis, and a right inguinal hernia. In March 1982, he underwent surgery to repair the hernia and, as a result, missed 10 weeks of work. He filed for disability under the supplemental plan and received compensation.
Early in May 1982, Blackmon was told that if he did not return to work by May 17, 1982, he would be fired. He returned to work on that day, but still continued to suffer from various medical problems.
During the next eight months, Blackmon did not miss a day of work, but his production, apparently measured largely by the premiums collected, steadily declined. On January 24, 1983, he was notified that because of his declining production he was being discharged effective January 28, 1983. On January 26, 1983, Blackmon visited his doctor and received a note stating that his medical condition was preventing *Page 89 
him from working "at his usual pace" and that he needed "more time" to recuperate. Blackmon presented this note to his supervisor and requested to be placed on disability status. Nevertheless, Blackmon was discharged on January 28.
Thereafter, Blackmon's doctor sent a letter to Peninsular stating that his medical problems were responsible for his declining production and asking that he not be terminated. Blackmon later received a doctor's statement indicating that he had been totally disabled since June 1982. Blackmon filed a claim with Peninsular under the supplemental plan; his claim was denied.
Blackmon brought suit against Peninsular and Connecticut General, alleging breach of contract and bad faith failure topay. Connecticut General was dismissed from the suit by way of summary judgment. Peninsular also moved for summary judgment, but its motion was denied, as were its later motions for directed verdict, J.N.O.V., and new trial. The jury returned a verdict for Blackmon of $2,086.19 on the breach of contract count and $175,000 on the bad faith count.
Peninsular appeals here, raising the following issues: (1) Whether a contract of insurance existed between Peninsular and Blackmon, and (2) whether the trial court erred by denying Peninsular's motion for directed verdict on the bad faith claim.
As this Court has previously stated, although every contract implies an obligation of good faith and fair dealings, the only breach of contract which gives rise to a tort cause of action for "bad faith" is breach of a contract of insurance. KennedyElectric Co. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983).
Peninsular does not dispute the jury's finding that a contract existed between it and Blackmon and that the contract was breached. Peninsular, however, argues that the contract was not one of insurance, giving rise to a bad faith claim, and, therefore, that the trial court erred in not granting its motion for a directed verdict. We agree.
The tort of bad faith refusal to pay a claim has heretofore been applied only in those situations where a typical insurer/insured relationship existed; that is, where the insured or his employer entered into a written contract of insurance with an insurer and premiums were paid into a central fund out of which claims were to be paid. We are very hesitant to expand the tort beyond these narrow circumstances.
Under the facts of this case, the relationship between Peninsular and Blackmon certainly was not typical of that which exists between an insurer and its insured. Instead, it is much more akin to that existing between an employer and his employee. Consequently, while the jury was correct in holding that a contract existed obligating Peninsular to pay Blackmon the disability compensation he seeks, and while that contract may bear some resemblance to a contract of insurance, it is not an insurance contract within the meaning of our cases defining the tort of bad faith. Therefore, the trial court erred in not granting Peninsular's motion for directed verdict on the bad faith claim, and the judgment based on the jury's verdict granting $175,000 in damages based upon that claim must be reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
All the Justices concur, except MADDOX, J., who recuses himself.