Metmor Financial, Inc., appeals from a summary judgment entered in favor of Commonwealth Land Title Insurance Company. The issue in this case is whether Metmor presented substantial evidence in support of its allegation of a bad faith failure to pay an insurance claim.
Terry and Carol Love applied to Metmor for a first mortgage loan on a new house they planned to purchase from Walter K. Underwood of Underwood Construction Company. The Veterans' Administration ("VA") was to guarantee the loan. Metmor conditioned its approval of the loan upon compliance with certain VA requirements, one of which was that the house have a 10-year warranty, to be submitted no later than submission of the loan report or loan disbursement. James B. Graham, Jr., a lawyer and a representative of Commonwealth, performed the closing services in regard to the loan.
The Loves contend that Graham closed the loan without ensuring that the house was *Page 296 
covered by the VA-required 10-year warranty. The Loves also claim that Graham specifically told them that Metmor had the 10-year warranty and that the warranty would be mailed to them.
Shortly after closing the loan and moving into the house, the Loves had several problems with the house and stopped making their mortgage payments. The Loves sued Underwood and Underwood Construction for breach of contract and sued Metmor for fraud.
Immediately after obtaining the loan, Metmor sold the Loves' note and mortgage to Fleet/Norstar Mortgage Company. Fleet/Norstar subsequently returned the note and mortgage to Metmor because the VA refused to issue a guarantee, because there was no 10-year warranty. Metmor filed a claim with Commonwealth's claims department, which denied the claim.
Metmor cross-claimed against Underwood and Underwood Construction. Metmor also filed a third-party complaint against Commonwealth, alleging breach of contract and a bad faith refusal to pay an insurance claim. Commonwealth moved to dismiss the third-party complaint, contending that Metmor did not have an insurance contract with Commonwealth, but instead had a "closing service letter," which, it said, was only an indemnity agreement.
The closing service letter read as follows:
 "This company [Commonwealth] is pleased to offer you [Metmor] hereby the protection of its insured closing service in connection with the closing of a transaction by our representative [James B. Graham, Jr.], for which a binder or commitment to issue the policy of this company has been issued, and our representative is acting in the capacity of examining counsel or closing medium.
 "With respect to such representative, the company does hereby agree to indemnify you against any and all actual loss or damage which you may sustain, including, but not limited to, the improper disbursement of funds transmitted by you to our said representative, by reason of the following:
 "(1) The fraud or dishonesty of our representative whether acting alone or conclusively, or
 "(2) The failure of our representative to comply with your written closing instructions not inconsistent with the provision of our binder or commitment issued in connection with your transaction.
 "The liability of the company for loss arising from the failure of our representative to comply with your written closing instructions relating to the obtaining, preparation or completion of any disclosure document or settlement statement, application, commitment or permit of any governmental agency or instrumentality which under federal or state law is required to be obtained or furnished by the lender, is limited to the failure of our representative to obtain the execution of such documents, by the proper parties or to disclose, in any such documents, charges, fees or premiums for services in connection with the issuance of the title insurance policy.
 "Company shall not be liable hereunder for any loss or damage you may sustain as a result of any bank failure, insolvency or suspension of operations.
 "The terms of this insured closing service may be changed, modified, amended or withdrawn any time by company upon written notice to you, provided however, that such change, modification or withdrawal shall not be effective with respect to any transaction in which funds shall have been transmitted by you to our representative prior to the receipt by you of such notice.
 "Company shall have no liability with respect to any loss or damage arising out of any closing to which this insured closing service is applicable unless notice of claim therefor shall be given in writing to the home office of the company . . . within one (1) year from the date of the said closing."
The trial court denied Commonwealth's motion to dismiss. Commonwealth then filed a motion for reconsideration of that denial, or, in the alternative, for a summary judgment. The trial court entered a summary judgment in favor of Commonwealth and certified *Page 297 
it as final, pursuant to Rule 54(b), A.R.Civ.P. Metmor appeals.
A summary judgment is appropriate only when the moving party shows "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), A.R.Civ.P. Once the moving party has made a prima facie showing that there is no genuine issue of material fact, the non-moving party must rebut that showing by presenting substantial evidence creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975; Hope v. Brannan, 557 So.2d 1208
(Ala. 1990). The evidence will be viewed in a light most favorable to the non-moving party. King v. Winn-Dixie ofMontgomery, Inc., 565 So.2d 12 (Ala. 1990).
In order to establish a bad faith claim, one must show: (1) "an insurance contract between the parties and a breach thereof by the defendant"; (2) "an intentional refusal to pay the insured's claim"; (3) "the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason)"; and (4) "the insurer's actual knowledge of the absence of any legitimate or arguable reason" or (5) "the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."National Security Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982); see Gillion v. Alabama Forestry Ass'n,597 So.2d 1315 (Ala. 1992).
Metmor argues that the closing service letter is an insurance contract between Metmor and Commonwealth. We disagree. This Court has previously stated that "although every contract implies an obligation of good faith and fair dealings, the only breach of contract which gives rise to a tort cause of action for 'bad faith' is [a] breach of a contract of insurance."Peninsular Life Ins. Co. v. Blackmon, 476 So.2d 87, 89 (Ala. 1985). An insurer-insured relationship must exist. An insurance contract would be evidenced by one party's entering into a written contract of insurance with the other, by the one's paying premiums to the other, and by the other's placing the premiums into a central fund out of which claims would be paid.Peninsular Life, supra, at 89.
The purpose of the closing service letter is to provide indemnity against loss due to a closing attorney's defalcation or failure to follow a lender's closing instructions. See,Lawyer's Title Insurance Corp. v. Edmar Construction Co.,294 A.2d 865 (D.C.App. 1972). It is clear from a reading of the closing service letter that it states Commonwealth's responsibility for the acts of its approved attorney. It is also clear that the closing service letter is not a title insurance policy. "Title insurance" is defined as "insurance of owners of property, or others having an interest therein or liens or encumbrances thereon against loss by encumbrance, or defective titles, or invalidity or adverse claim to title." §27-5-10, Ala. Code 1975.
We must conclude that Metmor presented no substantial evidence to support its bad faith claim. Therefore, we affirm the summary judgment.
AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in the result.