The plaintiff, Stephen Schoepflin, appeals from a summary judgment for the defendant, Tender Loving Care Corporation, in this action to recover damages for the defendant's alleged bad faith refusal to pay an insurance claim.[1] We reverse and remand. *Page 910 
The plaintiff purchased from the defendant a "New Car Protection . . . Mechanical Failure Service Contract." That contract, which described three available "coverage plans," provided, in part, that in the event of a mechanical breakdown the defendant would reimburse the plaintiff up to $2,000 for the cost of repairing or replacing certain covered parts on his new automobile. The contract also contained specific instructions concerning the procedure for filing a "claim" under the contract, as well as certain limitations on "coverage." Specifically, the contract excluded from coverage any mechanical breakdown caused by contamination of a covered automobile's engine by an outside source, such as water, mud, sand, etc.
The engine in Schoepflin's automobile failed; the defendant, concluding that the engine failure had been caused by water damage, denied his claim for reimbursement. Schoepflin sued, seeking damages based on allegations of breach of contract, fraud, and bad faith. The defendant moved for a summary judgment, submitting in support of its motion the contract; the affidavit of Anthony Wayne Carver, the owner and primary operator of Carvco Mechanical Inspections ("Carvco"), a company that the defendant retained to inspect the plaintiff's automobile; a "Mechanical Inspection Report" prepared by Johnny Lockhart, a former employee of Carvco; the affidavit of William H. Wettlaufer; a copy of a file prepared by a claims supervisor with Southern Guaranty Insurance Company, the plaintiff's automobile insurance carrier, in connection with a claim filed by the plaintiff under his automobile insurance policy; and various portions of the plaintiff's deposition. The plaintiff submitted two affidavits from Joe Sanders, a certified mechanic, tending to show that the engine had not failed because of water damage. On motion of the plaintiff, the trial court struck Carver's affidavit and the "Mechanical Inspection Report" attached to it. The trial court later entered a summary judgment for the defendant as to the fraud and bad faith claims, based on the remaining evidence, but denied the defendant's motion as to the breach of contract claim. The trial court certified the judgment on the bad faith claim as final, pursuant to Rule 54(b), Ala.R.Civ.P., and the plaintiff appealed. The validity of the summary judgment with respect to the fraud claim is not an issue on this appeal.
The plaintiff contends that the summary judgment was improper because, he says, the defendant failed to make the requisite prima facie showing of nonliability, as required by Rule 56, Ala.R.Civ.P. The defendant contends that the summary judgment was proper because, it argues, its contract with the plaintiff was not an insurance contract. See Metmor Financial, Inc. v.Commonwealth Land Title Insurance Co., [Ms. 1920477, August 20, 1993], 1993 WL 314783 (Ala. 1993). In addition, the defendant challenges the trial court's ruling excluding Carver's affidavit and the inspection report attached to it; however, the defendant argues that it made a prima facie showing that it had a debatable reason for denying the plaintiffs claim, even if the affidavit and report were properly excluded, and that the plaintiff presented no evidence to rebut that showing. SeeThomas v. Principal Financial Group, 566 So.2d 735 (Ala. 1990), for an in-depth discussion of the elements of the tort of bad faith.
"Insurance" is defined in Ala. Code 1975, § 27-1-2(1), as "[a] contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies." "Insurer" is defined in § 27-1-2(2) as "[e]very person engaged as indemnitor, surety or contractor in the business of entering into contracts of insurance." InPeninsular Life Insurance Co. v. Blackmon, 476 So.2d 87
(Ala. 1985), the plaintiff sued his employer, alleging a bad faith refusal to pay benefits under a supplemental temporary disability plan that had been provided by his employer as a fringe benefit. The employer paid benefits under the plan out of its general operating revenues, without withholding any premiums from the plaintiffs pay. In addition, the plan was an oral agreement; there was no written *Page 911 
policy and no formal mechanism for evaluating claims; there were no definitions to aid in determining whether the plaintiff was entitled to recover; and the plan was not regulated by the state insurance department. This Court, ruling as a matter of law that the contract, although bearing some resemblance to an insurance contract, was not an insurance contract within the meaning of our cases defining the tort of bad faith, stated:
 "The tort of bad faith refusal to pay a claim has heretofore been applied only in those situations where a typical insurer/insured relationship existed; that is, where the insured or his employer entered into a written contract of insurance with an insurer and premiums were paid into a central fund out of which claims were to be paid."
476 So.2d at 89. We further note that "insurance" is defined inBlack's Law Dictionary (6th ed. 1990) as follows:
 "A contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. The party agreeing to make the compensation is usually called the 'insurer' or 'underwriter'; the other, the 'insured' or 'assured'; the agreed consideration, the 'premium'; the written contract, a 'policy'; the events insured against, 'risks' or 'perils'; and the subject, right, or interest to be protected, the 'insurable interest.' A contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event and is applicable only to some contingency or act to occur in [the] future. An agreement by which one party for a consideration promises to pay money or its equivalent or to do an act valuable to [the] other party upon destruction, loss, or injury of something in which [the] other party has an interest."
See, also, 43 Am.Jur.2d Insurance § 1 (1982): "Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency."
The defendant, relying on the affidavit of William Wettlaufer, an assistant vice president of the defendant, argues that it is not an insurance company and that its contract with the plaintiff bears no resemblance to an insurance contract. The plaintiff maintains, however, that the defendant, for compensation, assumed the risk that the plaintiffs automobile would sustain a mechanical breakdown and that the defendant promised to pay him a certain sum of money if a covered breakdown occurred. This, the plaintiff argues, constituted "insurance" under Alabama law. We agree with the plaintiff.
The contract in this case was reduced to a formal document, it described three available "coverage plans," and it provided that in the event of a mechanical breakdown the defendant would pay the plaintiff for the cost of repairing or replacing certain covered parts on his new automobile. The contract also contained a specific procedure for filing "claims," as well as certain exclusions and pertinent definitions. Furthermore, the plaintiff paid a fee to the defendant in exchange for its assumption of the risk of a mechanical failure on his automobile. The defendant denies it is in the insurance business and the word "insurance" appears nowhere in the contract; however, these factors are not determinative. See 43 Am.Jur.2d Insurance, supra, § 4:
 "Whether a corporation or association is engaged in the insurance business must be determined by the particular objects which it has in view, and not by abstract declarations of general purposes; the business which the organization is actually carrying on, rather than the mere form of the organization, is the test for determining whether it is carrying on an insurance business. The names by which a company or association, or its certificates or policies, are designated, are not determinative of the question whether the organization is an insurance company or association or its contracts are in the nature of insurance policies. Basically, insurance, whether fire, marine, or any other form, is that which the authoritative cases and the legislature define it to be. *Page 912 
 "It is immaterial, or at least not controlling, that the term 'insurance' nowhere appears in the contract the nature of which is to be determined; indeed, the fact that it states that it is not an insurance policy is not conclusive, and a company may be found to be engaged in an insurance business even though it expressly disclaims any intention to sell insurance. Neither are the terms or mode of payment of the consideration determinative of the question whether the contract is one of insurance. The nature of a contract as one of insurance depends upon its contents and the true character of the contract actually entered into or issued — that is, whether a contract is one of insurance is to be determined by a consideration of the real character of the promise or of the act to be performed, and by a consideration of the exact nature of the agreement in the light of the occurrence, contingency, or circumstances under which the performance becomes requisite, and not by what it is called."
Based on the foregoing, we hold that the contract between the plaintiff and the defendant in this case was an insurance contract within the meaning of our cases defining the tort of bad faith and, therefore, that the defendant was not entitled to a summary judgment on the basis that it is not an insurer.
With respect to the defendant's remaining contentions, we conclude that Carver's affidavit and the inspection report (which, we note, is the only evidence in the record that supports the defendant's contention that when the claim was made it had a debatable reason for denying coverage) were admissible for the limited purpose of showing that the defendant had solicited and received a report from Carvco that stated that the plaintiffs automobile had suffered water damage. Although the plaintiff correctly argues that the affidavit and report were inadmissible under both the hearsay and the opinion evidence rules to show the cause of the engine failure, they nonetheless were admissible to show that the defendant was told by a representative of Carvco that the engine had suffered water damage and, therefore, that the defendant had a debatable reason for concluding that it was not contractually obligated to pay the plaintiff's claim. It is well settled that a statement made out of court, such as the inspection report in this case, is not excludable as hearsay if it is offered into evidence for the purpose merely of proving that the statement was made, provided that purpose is otherwise relevant to an issue in the case. Bryant v. Moss, 295 Ala. 339,329 So.2d 538 (1976); see, also, J. Colquitt, Alabama Law ofEvidence, § 8.2 (1990), and the cases collected therein. The plaintiff testified by deposition that he was informed by a representative of the defendant that his claim had been denied because the defendant had concluded that the engine had sustained water damage. Regardless of whether the engine actually sustained water damage (this issue remains to be determined in connection with the plaintiff's breach of contract claim), the fact of the defendant's receipt of, and reliance on, the inspection report was relevant with respect to the plaintiffs bad faith claim.
We hold, therefore, that the defendant made a prima facie showing that one of the necessary elements of a bad faith cause of action is missing in this case (i.e., the absence of a debatable reason for denying the claim). However, because the plaintiff was successful in having the only evidence that supported the defendant's motion excluded and because it may have been in reliance on the trial court's evidentiary ruling that the plaintiff submitted no additional evidence in rebuttal, we do not believe that an affirmance of the summary judgment would be proper, even though the record contained no evidence to rebut the defendant's prima facie showing. Instead, we reverse the summary judgment and remand the case to afford the plaintiff an opportunity to present any evidence that he may have to rebut the defendant's prima facie showing that it had a debatable reason for denying his claim.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.
[1] We note that the record contains the affidavit of William H. Wettlaufer, an assistant vice president of the defendant, which indicates that, before the filing of this action, the defendant's name was changed to Fidelity Warranty Services, Inc. However, because the parties continue to refer to the defendant as Tender Loving Care Corporation, we will also continue to do so. *Page 913