STEAGALL, Justice.
Metmor Financial, Inc. (“Metmor”), a third-party plaintiff, appeals from a summary judgment for the third-party defendant, Commonwealth Land Title Insurance Company (“Commonwealth”), on Metmor’s contractual indemnity claim.
This appeal arose from an action that Terry Love and his wife, Carol Love, brought against Metmor as their mortgage lender, alleging that Metmor had fraudulently induced them to purchase a new house by falsely representing that the house was covered by a 10-year warranty against construction defects. They alleged that a Metmor closing agent made these misrepresentations to the Loves’ closing attorney, James P. Graham, and that Graham repeated the misrepresentations to them. Commonwealth, which provides title insurance to attorneys, had an agreement with Metmor to indemnify Met-mor for any losses resulting from loan closings that Graham conducted. Ten months after the Loves filed their complaint against Metmor, Metmor notified Commonwealth of the Loves’ action and, although Graham was not a defendant to that action, Metmor sought indemnity for his performance in the closing. Commonwealth denied the claim, and Metmor filed a third-party complaint against Commonwealth, alleging breach of contract and bad faith failure to pay its indemnity claim.
The Loves and Metmor settled the underlying fraud action against Metmor; thereafter, the trial court dismissed Metmor’s third-party bad faith claim against Commonwealth; this Court affirmed that dismissal in Metmor *941 Financial, Inc. v. Commonwealth Land Title Ins. Co., 645 So.2d 295 (Ala.1993). The trial court subsequently entered a summary judgment for Commonwealth on the breach of contract claim, holding that Metmor was not entitled to indemnity because, the court held, it had failed to give Commonwealth timely notice of the Loves’ action. Metmor appeals from that summary judgment; we affirm.
The record shows that in 1981 Metmor operated from an office in Columbus, Georgia, and did business in Russell County, Alabama, through certain attorneys, including James P. Graham. To facilitate Metmor’s use of Graham as a closing attorney, Commonwealth issued to Metmor in 1989 an “insured closing service letter,” which provided specific indemnities for losses resulting from any “fraud or dishonesty” on Graham’s part or from his failing to comply with Metmor’s written closing instructions.
The Loves applied for a Metmor mortgage loan in 1989, and Graham was their closing attorney. The loan was conditioned upon Metmor’s obtaining a 10-year warranty against construction defects in the house that the Loves planned to buy; the Veterans’ Administration (“VA”) required this 10-year warranty as a condition to its guaranty of the loan. Michelle Clayton, a Metmor agent, falsely stated to Graham that Metmor had the warranty and would mail it to the Loves after the loan had been closed. Graham repeated Clayton’s misrepresentation to the Loves, who relied upon it to close the loan.
After the closing, Metmor sold the Loves’ note and mortgage to Fleet/Norstar Mortgage Company (“Fleet/Norstar”). However, the VA refused to guarantee the note and mortgage because the house did not have the requisite 10-year warranty; Fleet/Norstar returned the note and mortgage to Metmor. In December 1989, Metmor sent a claim letter to Commonwealth, stating that Graham had closed the Loves’ loan without having properly obtained the 10-year warranty and seeking recovery for losses in its transaction with Fleet/Norstar. Commonwealth investigated Graham’s performance during the closing and then sent a reply letter to Metmor on February 15, 1990, denying coverage. The letter stated that because Met-mor agent Michelle Clayton knew at the time of the closing that Metmor did not have the 10-year warranty and falsely told Graham that it did, Graham was not responsible for the mistake. The letter gave Metmor 30 days to respond to the denial of coverage; however, Metmor did not do so.
In 1989, the Loves moved into the house and began experiencing problems stemming from its construction. Throughout late 1989 and 1990, they were in contact with their attorney, Metmor, the VA, and various contractors and repair companies in an attempt to straighten out these problems. They discovered that the house was not covered by the 10-year warranty and that the VA would therefore not guarantee their loan. When the structural problems continued, the Loves stopped making their mortgage payments, and Metmor foreclosed on their mortgage. Metmor did not contact Commonwealth about any of these developments.
The Loves sued Metmor in February 1991, and Metmor undertook its own defense, with three law firms. Both the Loves and Met-mor in February 1991 began extensive discovery, deposing 20 witnesses and filing and answering interrogatories. Commonwealth was not informed of, or involved in, any of these proceedings. On December 12, 1991, however, Metmor agent Barbara Ackerman wrote a letter to Commonwealth, giving notice of the Loves’ action and requesting that Commonwealth assume Metmor’s defense. Ackerman also informed Commonwealth that Metmor was filing a third-party complaint against it. Commonwealth responded by letter, stating that the Loves’ action arose from Metmor’s own misconduct through Michelle Clayton’s misrepresentations, and refusing-coverage. Commonwealth further stated that Metmor had not given timely notice of the Loves’ action, and that its failure to give timely notice, along with its undertaking of its own defense, released Commonwealth from any duty to defend or indemnify.
In entering the summary judgment for Commonwealth, the trial court relied on Cochrane Roofing & Metal Co. v. Callahan, 472 So.2d 1005 (Ala.1985), which involved an indemnity clause in a construction project subcontract, wherein the subcontractor *942 agreed to indemnify “and exonerate” the contractor against losses on the project arising out of work done by the subcontractor. The indemnification contract did not expressly require the contractor to give the subcontractor notice of claims against the contractor. The owner of the warehouse project on which the work had been done sued the contractor; the contractor failed to give the subcontractor notice of the lawsuit until over two years after the complaint had been served on the contractor. This Court held that the law implied an obligation under which the indem-nitee must “within a reasonable time” give notice to the indemnitor of the claim to be indemnified against and must make a “prompt forwarding” of the complaint once it is served. 472 So.2d at 1007. This Court pointed out that notice is essential so that the indemnitor can properly investigate the claim and prepare a defense against it, and it held that the failure to give notice would absolve the indemnitor from the duty to save harmless the other party. 472 So.2d at 1008.
The trial court held that, under Cochrane, Commonwealth had no duty to indemnify Graham because, it held, Metmor’s 10-month delay in giving notice of the Loves’ action was unreasonable. Metmor argues that the Cochrane notice requirement arises from the indemnitor’s duty to defend, not its duty to indemnify; Metmor further argues that Commonwealth does not have the duty to defend, but merely to indemnify, and Met-mor concludes that it was not required to give Commonwealth timely notice of the Loves’ action. Metmor urges this Court to revisit Cochrane and to limit its holding to apply only where there is an express duty to defend an indemnitee.
After examining the record, we conclude that the trial court’s reliance on Cochrane was misplaced. As stated, the indemnity agreement in Cochrane did not contain a provision requiring the indemnitee to give notice of the claim against him, and this Court held that, under those facts, the law implied such a duty. In this case, Commonwealth’s indemnity letter does provide a specific notice requirement; thus, there is no occasion to look beyond it and to revisit Cochrane. The letter states:
“[Commonwealth] shall have no liability with respect to any loss or damage arising out of any closing to which this insured closing service is applicable unless notice of claim therefor shall be given in writing to the home office of the company ... within one (1) year from the date of said closing.”
With this notice requirement, Commonwealth limited its indemnity liability to only those claims of which it had notice within a year of closing. Metmor concedes that it gave notice of the Loves’ action over two years after the loan had been closed; however, it points out that it filed a claim based on the Fleet/Nors-tar transaction within the year. Because both the Fleet/Norstar claim and the Loves’ claim were based on some of the same facts, Metmor concludes that notice of the Fleet/Norstar claim was sufficient notice of the Loves’ claim.
We disagree. Commonwealth did have notice within one year that the Loves’ loan had been closed without the requisite 10-year warranty, but only as it pertained to Met-mor’s loss in its transaction with Fleet/Nors-tar. Commonwealth denied the Fleet/Nors-tar claim because it concluded that Metmor’s own agent, Clayton, and not Graham, was responsible for the misrepresentation. Although Commonwealth invited Metmor to respond to that conclusion, Metmor did not dispute Commonwealth’s conclusion, nor did it protest the denial of the Fleet/Norstar claim. Metmor’s silence impliedly admitted the truth of Commonwealth’s conclusion that Clayton was responsible for the misrepresentation in the loan closing, Ward v. Dale County Farmers Co-op., Inc., 472 So.2d 978 (Ala.1985); therefore, mere notice of the faulty closing was not sufficient to alert Commonwealth that Metmor would later seek indemnity for other claims arising from the loan. Until two years after the loan closing, Metmor did not inform Commonwealth of the problems it knew the Loves were having with the house or of any of the developments that led to the eventual filing of them lawsuit. Metmor, therefore, failed to comply with the notice requirement of the indemnity letter, and Commonwealth had no duty to Metmor in regard to the Loves’ lawsuit.
*943 Although the trial court’s reliance on the Cochrane rationale was misplaced, it correctly held that Commonwealth had no obligation to indemnify Metmor. This Court will affirm a summary judgment that is properly entered, even if the trial court gave the wrong reasons for entering it. Boyd v. Brabham, 414 So.2d 931 (Ala.1982).
The judgment is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and INGRAM, JJ., concur.