**Robert W. SALVA and Iris
H. Salva, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD
OF ALABAMA, Defendant.**

No. Civ.A. 01–0329–S.

United States District Court,
S.D. Alabama,
Southern Division.

June 18, 2001.

John D. Richardson, G. Randall Spear, Richardson, Spear & Spear, P.C., Mobile, AL, for plaintiffs.

Forrest S. Latta, Helen F-J Joyce, Pierce, Ledyard, Latta Wasden & Bowron, P.C., Mobile, AL, for defendant.

## ORDER

STEELE, United States Magistrate Judge.

This matter is before the Court on the defendant's motion to strike and/or dismiss claims for extracontractual damages, punitive damages and jury demand. (Doc. 2). The parties have filed briefs supporting their respective positions, (Docs.3, 4, 5, 9), and the defendant's motion is now ripe for resolution. For the reasons that follow, the Court concludes that the defendant's motion is due to be granted.

## BACKGROUND

According to the complaint, the plaintiffs were insured under a health insurance policy issued by the defendant with an effective coverage date of May 1, 2000. On or about April 30, 2000, plaintiff Iris Salva was admitted to a Mobile hospital with complaints of severe abdominal pain. On or about May 5, 2000, exploratory surgery discovered colon cancer. The defendant apparently refused to pay some or all of the plaintiffs' medical bills in reliance on the policy's pre-existing condition provision.

The two-count complaint asserts causes of action for breach of contract and bad faith. The defendant removed on the grounds that the subject policy is a group policy subject to ERISA and that the plaintiffs' state-law claims are completely preempted by ERISA, bestowing federal question jurisdiction. (Doc. 1 at 2). In its current motion, the defendant argues that ERISA defensively preempts both of the plaintiffs' state-law claims, thereby eliminating any right to seek extracontractual damages, punitive damages or a jury trial. (Doc. 2).

## DISCUSSION

The plaintiffs acknowledge that their "claim for breach of contract is one which must be brought under ERISA." (Doc. 4 at 1). By this statement, the plaintiffs correctly concede that their breach of contract claim is completely preempted, creating federal question jurisdiction. *See, e.g., Butero v. Royal Maccabees Life Insurance Co.,* 174 F.3d 1207, 1211–12 (11th Cir. 1999). Their breach of contract claim is also defensively preempted. *E.g., Swerhun v. Guardian Life Insurance Co. of America,* 979 F.2d 195, 198 (11th Cir.1992) ("We have consistently held that ERISA preempts state law breach of contract claims."). The plaintiffs offer no argument to the contrary.

The parties have not specifically addressed whether the plaintiff's bad faith claim is also completely preempted. *See, e.g., Butero v. Royal Maccabees,* 174 F.3d at 1212–13 (finding an Alabama plaintiff's bad faith claim to be completely preempted under the circumstances presented). Nor have they addressed whether a claim completely preempted by ERISA is necessarily defensively preempted as well. *See id.* at 1215 ("If the plaintiff's claims are superpreempted, then they are also defensively preempted."). Because the parties have instead focused on a pure defensive preemption analysis of the plaintiffs' bad faith claim, the Court does so as well.

Thus, the central issue before the Court is whether the plaintiff's claim for bad faith is defensively preempted or whether it falls within ERISA's savings clause. The parties agree that the plaintiffs' bad faith claim "relate[s] to a[n] employee benefit plan," 29 U.S.C. Section 1144(a), so that it is preempted unless it falls within the savings clause. *E.g., Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

ERISA's preemption provision contains a savings clause that excludes from preemption "any law of any state which regulates insurance, banking or securities." 29 U.S.C. Section 1144(b)(2)(A).

The savings clause applies only if the state law: (1) "regulates" insurance "within a common-sense view" of the term; and (2) regulates the "business of insurance" as contemplated under the McCarran–Ferguson Act, 15 U.S.C. Sections 1011 *et seq. Smith v. Jefferson Pilot Life Insurance Co.,* 14 F.3d 562, 569 (11th Cir.), *cert. denied,* 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994).

In *Dedeaux,* the Supreme Court held that "[a] common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. 1549. In *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), the Supreme Court "identified three criteria relevant in determining whether a particular practice is part of the 'business of insurance' exempted from the antitrust laws by [Section] 2(b): *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Id.* at 129, 102 S.Ct. 3002 821290780055 (emphasis in original); *accord Pilot Life v. Dedeaux,* 481 U.S. at 48–49, 107 S.Ct. 1549870429530009.

The Supreme Court in *Dedeaux* held that Mississippi's tort of bad faith satisfies neither the common-sense test nor the McCarran–Ferguson test. 481 U.S. at 49–51, 107 S.Ct. 1549. The Eleventh Circuit, relying on *Dedeaux,* then held that Alabama's tort of bad faith likewise does not fall within ERISA's savings clause. *Belasco v. W .K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 281 (11th Cir.1987); *accord Amos v. Blue Cross–Blue Shield,* 868 F.2d 430–31 (11th Cir .) ("Also above question is

that the plaintiffs' state law causes of action [including bad faith] are not excepted from ERISA preemption."), *cert. denied,* 493 U.S. 855, ·110 S.Ct. ·158, 107 L.Ed.2d 116 (1989); *see also Swerhun v. Guardian Life,* 979 F.2d at 199 (Florida's bad faith statute does not fall within ERISA's savings clause); *Anschultz v. Connecticut General Life Insurance Co.,* 850 F.2d 1467, 1468–69 (11th Cir.1988) (same).

*Belasco* and *Amos* would appear to be determinative, but the plaintiffs argue that a recent Supreme Court opinion so altered the relevant calculus that prior Eleventh Circuit precedent is no longer good law. In *UNUM Life Insurance Co. of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), the Supreme Court acknowledged that "applying the States' varying insurance regulations creates disuniformities" for plans operating in multiple states but that " '[s]uch disuniformities ... are the inevitable result· of the congressional decision to "save" local insurance regulation.' " *Id.* at 376 n. 6, 119 S.Ct. 1380 (quoting *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). The *Ward* Court also noted that the Mississippi tort of bad faith at issue in *Dedeaux* constituted "law not specifically directed to the insurance industry and therefore not saved from ERISA preemption." *Id.* at 377 n. 7, 119 S.Ct. 1380. The plaintiffs, relying on a recent opinion by Judge Acker, conclude that the inevitable consequence of these two footnotes from *Ward* is that Alabama bad faith claims must fall within ERISA's savings clause.

In *Hill v. Blue Cross Blue Shield,* 117 F.Supp.2d 1209 (N.D.Ala.2000), the Court construed the quoted footnotes from *Ward* as compelling the conclusion that a bad faith cause of action necessarily falls within the savings clause if the tort "is limited to the insurance industry." 117 F.Supp.2d

at 1212. The *Hill* Court then concluded that Alabama's tort of bad faith is so limited. *Id.* The *Hill* Court's analysis, however, is fatally flawed in several respects.

 First, the *Ward* Court did not hold or even suggest that bad faith claims necessarily fall within the savings clause so long as the tort is limited to the insurance industry. "The savings clause applies only if *both* parts of a two-step test are satisfied...." *Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335, 1341 n. 6 (11th Cir.1992) (emphasis added); *see also Buce v. Allianz Life Insurance Co.,* 247 F.3d 1133, 1150 n. 1 (11th Cir.2001) (Barkett, J., concurring).[1] Thus, a state law that does not satisfy the common-sense test cannot fall within the savings clause. As previously noted, the common-sense test requires that the state law "must be specifically directed toward that [insurance] industry." *Pilot Life v. Dedeaux,* 481 U.S. at 50, 107 S.Ct. 1549. *Ward*'s footnote 7, using identical language, simply and unremarkably acknowledges that, because Mississippi's tort of bad faith is "not specifically directed to the insurance industry," it cannot satisfy the common-sense test and therefore cannot fall within the savings clause. Footnote 7 quite plainly does not support the proposition that the converse is also true—that is, that if the common-sense test *is* satisfied, a bad faith claim necessarily *does* fall within the savings clause, regardless of the McCarran–Ferguson test.

Footnote 6, in turn, stands only for the similarly unremarkable proposition, expressly recognized as early as 1985 by the *Metropolitan Life* Court, that the inescapable effect of the savings clause is that laws falling within its scope will not be uniform across state lines. This truism recognizes that, absent preemption, different state laws will apply, but it says nothing whatsoever concerning *when* preemption will or will not apply.[2]

 Even if footnotes 6 and 7 could be read as the plaintiffs urge, this Court would be powerless to conclude that Alabama's tort of bad faith satisfies the common-sense test. In *Belasco,* the Eleventh Circuit held that "the Alabama law of bad faith appears to us to have the same roots 'in the general principles of ... tort and contract law' as was the case in *Dedeaux.*" 833 F.2d at 281 (quoting *Pilot Life v. Dedeaux,* 481 U.S. at 50, 107 S.Ct. 1549). The language quoted from *Dedeaux* is that used by the Supreme Court to conclude that Mississippi's law of bad faith does not satisfy the common-sense test. Thus, *Belasco* forecloses any argument that Alabama's tort of bad faith does satisfy the common-sense test. While both *Hill* and *Gilbert v. Alta Health & Life Insurance Co.,* 122 F.Supp.2d 1267, 1272 (N.D.Ala. 2000), offer several reasons for concluding that Alabama's tort of bad faith satisfies the common-sense test, they provide no justification for ignoring controlling precedent to the contrary.[3] Accordingly, this

---

1. That the *Ward* Court described the McCarran–Ferguson factors as "checking points" or "guideposts," 526 U.S. at 374, 119 S.Ct. 1380, does not render the McCarran–Ferguson test optional. Rather, it reflects only that the McCarran–Ferguson test, while still essential, may be satisfied with less than a perfect score. *See id.* at 373–74, 119 S.Ct. 1380 (finding the McCarran–Ferguson test satisfied where two of three of its criteria were present).

2. It is telling that the footnotes on which the *Hill* Court relied do not even appear in the Supreme Court's discussion of the savings clause but in a separate, subsequent section addressing fall-back arguments advanced by the insurer in the event the Court were to find the savings clause applicable.

3. Indeed, neither *Hill, Gilbert* nor the plaintiffs in this case acknowledge the existence of the *Belasco* opinion at all.

Court is bound by *Belasco* and must hold that Alabama's tort of bad faith does not satisfy the common-sense test.

 Even could the Court conclude that the common-sense test is satisfied, the McCarran–Ferguson test plainly is not. First, the tort of bad faith does not "ha[ve] the effect of transferring or spreading a policyholder's risk." The Supreme Court in *Dedeaux* explicitly held that "the Mississippi common law of bad faith does not effect a spreading of policyholder risk," 481 U.S. at 50, 107 S.Ct. 1549, and the plaintiffs have offered no possible rationale for concluding that Alabama's tort of bad faith nevertheless does spread policyholder risk.[4]

Second, the tort of bad faith is not "an integral part of the policy relationship between the insurer and the insured." While "the contours of the second criterion are somewhat vague," *Smith v. Jefferson Pilot*, 14 F.3d at 570, the *Ward* Court held the factor satisfied when the term "changes the bargain between insurer and insured [by] 'effectively creat[ing] a mandatory contract term.'" 526 U.S. at 374, 119 S.Ct. 1380 (quoting *Cisneros v. UNUM Life Insurance Co. of America*, 134 F.3d 939, 946 (9th Cir.1998), *cert. denied*, 526 U.S. 1086, 119 S.Ct. 1495, 143 L.Ed.2d 650 (1999)). In *Ward*, the second factor was satisfied by a "notice-prejudice" rule requiring the insurer to prove actual prejudice before denying an insured's claim for lack of timely notice. *Id.* at 366–67, 374, 119 S.Ct. 1380. This law effectively altered the express language of the policy—that proof of claim must be filed within 1 ½ years of the onset of disability—to allow proof of claim to be made even later, absent prejudice to the insurer.

 Alabama's tort of bad faith, in contrast, does not effectively alter the terms of the parties' contract. On the contrary, as the Supreme Court has expressly held, "the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages, [so that it] is therefore no more 'integral' to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State." *Dedeaux*, 481 U.S. at 51, 107 S.Ct. 1549. Thus, the tort's connection to the insured-insurer relationship is "attenuated" rather than "integral." *Id.; accord Anschultz v. Connecticut General*, 850 F.2d at 1469 (Florida's bad faith statute is not an integral part of the policy relationship but merely "provides, regardless of the substantive terms of the Plan, that an alleged breach of the Plan will allow a beneficiary ... to pursue various civil remedies").

Ignoring *Dedeaux* and *Anschultz*, the plaintiffs rely on Judge Johnson's decision in *Gilbert*. While the *Gilbert* Court concluded that Alabama's tort of bad faith satisfies the second McCarran–Ferguson factor, it did so without any consideration of the binding precedent of *Dedeaux* or *Anschultz*. Instead, purporting to rely on *Ward*, the *Gilbert* Court reasoned that the tort of bad faith "provide[s] a clear limitation on the insurer and level[s] the prover-

---

4. In *Smith v. Jefferson Pilot*, the Court held that the first McCarran–Ferguson factor "concerns only laws that impact the original apportionment of risks covered by the policy," a "transfer [that is] complete at the time the contract is entered." 14 F.3d at 569 & n. 9. The Supreme Court in *Ward* expressly refused to consider whether the first McCarran–Ferguson factor is limited to laws allocating the risk as initially contracted for, 526 U.S. at 374, 119 S.Ct. 1380, leaving *Smith* as controlling precedent binding in this Circuit. Even absent *Dedeaux*, *Smith* would be dispositive of the first McCarran–Ferguson factor.

bial 'playing field' of insurance to one of good faith." 122 F.Supp.2d at 1272–73. The Court's explanation, however, fails to demonstrate that the tort of bad faith "changes the bargain between insurer and insured" as required by *Ward,* because "Alabama recognizes the rule that 'every contract does imply [an obligation of] good faith and fair dealing.'" *Hoffman–La-Roche, Inc. v. Campbell,* 512 So.2d 725, 738 (Ala.1987) (quoting *Kennedy Electric Co. v. Moore–Handley, Inc.,* 437 So.2d 76, 81 (Ala.1983)). Because Alabama law reads into *every* contract an implied obligation of good faith, the tort of bad faith does not impose an otherwise non-existent obligation but merely provides an additional *remedy* for the failure to fulfill the pre-existing obligation of good faith. *E.g., Metmor Financial, Inc. v. Commonwealth Land Title Insurance Co.,* 645 So.2d 295, 297 (Ala.1993) (" '[A]lthough every contract implies an obligation of good faith and fair dealings, the only breach of contract which gives rise to a tort cause of action for "bad faith" is [a] breach of a contract of insurance.'") (quoting *Peninsular Life Insurance Co. v. Blackmon,* 476 So.2d 87, 89 (Ala.1985)).

■ With respect to the third McCarran–Ferguson factor, the Supreme Court in *Dedeaux* assumed that the Mississippi tort of bad faith, although rooted in general common law principles such that the common-sense test was not satisfied, is nevertheless technically limited to entities within the insurance industry, arguably satisfying the third McCarran–Ferguson factor, but nevertheless concluded that the McCarran–Ferguson test does not "support the assertion that the Mississippi law of bad faith 'regulates insurance'" when the tort "at most meets one of the three criteria used to identify the 'business of insurance' under the McCarran–

Ferguson Act." 481 U.S. at 50–51, 107 S.Ct. 1549; *accord Belasco v. W.K.P. Wilson & Sons,* 833 F.2d at 281 (the *Dedeaux* analysis applies to Alabama's tort of bad faith in the same manner as in *Dedeaux* and requires the same result.). Thus, while it is true that the Supreme Court has "reject[ed][the] assertion that a state regulation must satisfy all three McCarran–Ferguson factors in order to 'regulate insurance' under ERISA's savings clause," *UNUM Life v. Ward,* 526 U.S. at 373–74, 119 S.Ct. 1380, it is equally plain that satisfying only the third McCarran–Ferguson factor, without satisfying either of the other factors, is an insufficient basis for finding the McCarran–Ferguson test to be met. *See also Willett v. Blue Cross & Blue Shield,* 953 F.2d at 1341 n. 6 ("The fact that [a state law] meets the third prong of the *Dedeaux* test is insufficient to bring it within the savings clause."); *Anschultz v. Connecticut General,* 850 F.2d at 1469.[5]

Finally, and while unnecessary to the Court's decision, it is worth noting that at least three district judges have held that Florida bad faith claims, held to lie outside the savings clause in *Anschultz* and *Swerhun,* continue to be preempted following *Ward. See Chilton v. Prudential Insurance Co. of America,* 124 F.Supp.2d 673, 680–82 (M.D.Fla.2000); *Bridges v. Provident Life & Accident Insurance Co.,* 121 F.Supp.2d 1369, 1371–73 (M.D.Fla.2000); *Chiroff v. Life Insurance Co. of North America,* 142 F.Supp.2d 1360, 1367–68 (S.D.Fla.2000).

Because the plaintiffs' state law causes of action are defensively preempted by ERISA, the plaintiffs are entitled to pursue only the remedies and procedures provided by ERISA. The defendant argues, and the plaintiffs do not dispute, that the

---

**5.** Notably, the *Ward* Court found the McCarran–Ferguson test satisfied only after concluding that two of its three criteria were present. 526 U.S. at 374–75, 119 S.Ct. 1380.

only civil remedies available to the plaintiffs are those set forth in 29 U.S.C. Section 1132(a). The complaint seeks payment of medical bills and mental anguish damages under the breach of contract clam and seeks similar damages, plus punitive damages, under the bad faith claim. The plaintiffs thus are effectively seeking "to recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. Section 1132(a)(1)(B). The Eleventh Circuit has "held that ERISA Sections 502(a)(1)(B) [and others] do not provide for extra-contractual or punitive damages." *Godfrey v. BellSouth Telecommunications, Inc.,* 89 F.3d 755, 761 (11th Cir.1996). Similarly, no jury trial is available in an action brought under Section 1132(a)(1)(B). *E.g., Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 907–08 (11th Cir.1997). The plaintiffs offer no argument to the contrary.

The Eleventh Circuit has suggested that a state law claim subject to defensive preemption under ERISA may be dismissed with leave to refile. *Butero v. Royal Maccabees,* 174 F.3d at 1215. The defendant, however, instead requests the Court simply to strike those portions of the complaint seeking relief not available under Section 1132(a)(1)(B), leaving the existing complaint intact as a claim under that section. As the plaintiffs have not objected to this procedure, the Court will utilize it.

### CONCLUSION

In summary, to fall within ERISA's savings clause a state law must satisfy both the common-sense test and at least two criteria of the McCarran–Ferguson test. The Eleventh Circuit's holding in *Belasco* that Alabama's tort of bad faith meets neither test is still good law following *Ward.* Accordingly, the defendant's motion to strike and/or dismiss is **granted.** The plaintiffs' complaint will be construed as one asserting a claim only under 29 U.S.C. Section 1132(a)(1)(B).